UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jessica Gouwens, individually and on behalf of all others similarly situated, | 3:22-cv-50016 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Target Corporation, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Target Corporation ("Defendant") manufactures, labels, markets, and sells fruit punch flavored beverage concentrate under its Market Pantry brand (the "Product").



2. The front label indicates the fruit punch taste comes from natural ingredients, through the statement, "Natural Flavor With Other Natural Flavors," with pink and red colors reflective of fruit punch, and that it is "Infused With B-Vitamins."



3. The promise of only natural flavoring appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects.

4. According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and/or healthy than foods with artificial flavors, and they would pay more for such foods.

5. Federal and identical state regulations require foods to disclose the source of its flavor. 21 C.F.R. § 101.22.

6. Natural flavor comes from natural sources, including fruits and vegetables, plants, dairy products, and meat. 21 C.F.R § 101.22(a)(3).

7. Artificial flavor is any substance not obtained from natural sources whose function is to provide flavor. 21 C.F.R § 101.22(a)(1).

8. Where a food's main flavors are from artificial flavor, the front label is required to prominently disclose this, i.e., "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

9. While the ingredients list "Natural Flavor" as the fourth most predominant ingredient, this is less than "Malic Acid," the second ingredient.

**INGREDIENTS:** WATER, <mark>MALIC ACID</mark>, CITRIC ACID, LESS THAN 2% OF: <mark>NATURAL FLAVORS</mark>, SUCRALOSE, ACESULFAME POTASSIUM, POTASSIUM CITRATE, GUM ARABIC, RED 40, SUCROSE ACETATE ISOBUTYRATE, NIACINAMIDE (VITAMIN B3), PYRIDOXINE HYDROCHLORIDE (VITAMIN B6), CYANOCOBALAMIN (VITAMIN B12), POTASSIUM SORBATE (PRESERVATIVE).

10. Malic Acid (molecular formula $C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

11. Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069.

12. L-Malic Acid occurs naturally in various fruits and provides, among other flavors, tartness.

13. D-malic Acid does not occur naturally.

14. DL-malic acid is the racemic mix of the D isomer and L isomer.

15. DL-malic acid is a synthetic chemical manufactured from petroleum.

16. Since there are natural and artificial types of malic acid, Defendant is required to tell consumers if it used the artificial version, instead of only using the generic name.

17. Laboratory analysis concluded the Product contains dl-malic acid.

18. The Product could have used natural, L-Malic Acid, or (more) natural fruit flavors.

19. However, Defendant used artificial dl-malic Acid because it was lower-priced and/or more accurately resembled the natural fruit flavor in fruit punch.

20. Defendant adds the artificially sourced ingredient of dl-malic acid to the Product to create, enhance, simulate, and/or reinforce the tart, sweet, and fruity taste that consumers associate with fruit punch.

21. By omitting any reference to artificial flavor on the front and ingredient list, coupled with the statement of "Natural Flavor With Other Natural Flavors," consumers like Plaintiff expected only natural flavors.

22. Consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit.

23. The Product contains and makes other representations which are false or misleading.

24. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

25. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

26. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

27. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

28. The Product is sold for a price premium compared to other similar products, for no

less than $1.99 per 1.62 OZ or 24 servings, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

29. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

30. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

31. Plaintiff Jessica Gouwens is a citizen of Illinois.

32. Defendant Target Corporation, is a Minnesota corporation with a principal place of business in Minneapolis, Hennepin County, Minnesota

33. Defendant transacts business within this District through sale of the Product to residents of this District, by third-parties such as grocery stores, big box stores, drug stores, convenience stores, and online.

34. Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

35. Venue is in Western Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in McHenry County, i.e., Plaintiff's purchase and use of the Product and her awareness and/or experiences of and with the issues described here.

## Parties

36. Plaintiff Jessica Gouwens is a citizen of Huntley, McHenry County, Illinois.

37. Defendant Target Corporation is a Minnesota corporation with a principal place of business in Minneapolis, Minnesota, Hennepin County.

38. Founded as the Dayton Dry Goods Company by George D. Dayton in 1902, Target

has almost 2,000 stores in the United States.

39. Dayton's principles shaped the future of Target, as he was committed to "the higher ground of stewardship," which meant dependable merchandise and fair business practices.

40. Target was one of many "upscale" discount stores which emerged in the 1960s.

41. One of Target's defining features was experimenting with new retail concepts.

42. For example, Target developed B. Dalton, the country's largest bookstore during the 1970s and 1980s.

43. Target has been known for its values and unique approach to business and community, through its ethics, transparency to investors and customers, and philanthropy.

44. While Target stores sell leading national brands, they sell a large number of products under one of their private label brands, Market Pantry.

45. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

46. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

47. Products under the Market Pantry brand have an industry-wide reputation for quality and value.

48. In releasing products under the Market Pantry brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

49. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

50. That Market Pantry branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

51. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

52. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

53. Private label products under the Market Pantry brand benefit by their association with consumers' appreciation for the Target brand as a whole.

54. The development of private label items is a growth area for Target, as they select only top suppliers to develop and produce Market Pantry products.

55. The Product is available to consumers in this District from Defendant's retail stores and website.

56. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Target, at locations including 750 S Randall Rd Algonquin IL 60102-5915 between December 2020 and June 2021, among other times.

57. Plaintiff believed the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

58. Plaintiff bought the Product because she expected it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients because that is what the representations said and implied.

59. Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

60. Plaintiff is one of the many Americans who avoid artificial flavor ingredients,

believing they are unhealthy and potentially harmful, and prefers natural ingredients.

61. Plaintiff did not expect that a product would promise only natural flavoring yet contain a greater amount of an artificial flavor ingredient than natural flavor.

62. Plaintiff trusted the Market Pantry brand because it is equivalent to, and often exceeds, the national brands, in quality.

63. Plaintiff was disappointed because she believed the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

64. Plaintiff bought the Product at or exceeding the above-referenced price.

65. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

66. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

67. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

68. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

69. Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar flavored drink concentrates, because she is unsure whether those representations are truthful.

Class Allegations

70. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of an:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of

limitations for each cause of action alleged; and a

**Consumer Fraud Multi-State Class**: All persons in the States of Michigan, Texas, Arkansas, Delaware, Wyoming, Virginia and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

71. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

72. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

73. Plaintiff is an adequate representative because her interests do not conflict with other members.

74. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

75. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

76. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

77. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

78. Plaintiff incorporates by reference all preceding paragraphs.

79. Plaintiff and class members desired to purchase a product that contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

80. Defendant's false and deceptive representations and omissions are material in that

9

they are likely to influence consumer purchasing decisions.

81. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

82. Plaintiff relied on the representations that the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

83. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

84. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

85. Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

86. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

87. In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

88. Plaintiff entered into a contract with Defendant for purchase of the Product

89. The terms of the contract provided that the Product contained only natural flavoring

ingredients and did not contain artificial flavoring ingredients.

90. Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

91. Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

92. The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

93. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

94. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

95. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

96. Defendant's representations affirmed and promised that the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

97. Defendant described the Product as one which contained only natural flavoring ingredients and did not contain artificial flavoring ingredients, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

98. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

99. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

100. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

101. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

102. Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

103. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

104. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

105. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

106. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

107. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

108. Defendant had a duty to truthfully represent the Product, which it breached.

109. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

110. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated their extra-labeling promises and commitments to quality, transparency and putting its customers first.

111. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

112. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

113. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

114. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

115. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

116. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

117. Defendant knew of the issues described here yet did not address them.

118. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

119. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: January 16, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

                                          60 Cuttermill Rd Ste 409
                                          Great Neck NY 11021
                                          Tel: (516) 268-7080
                                          spencer@spencersheehan.com