# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA GOUWENS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>TARGET CORPORATION,<br><br>        Defendant. | Case No. 3:22-cv-50016<br><br>The Honorable Iain D. Johnston |

## MEMORANDUM OF LAW IN SUPPORT OF TARGET CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Target Corporation

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

RELEVANT REGULATORY BACKGROUND .................................................................... 2

ALLEGATIONS OF THE COMPLAINT ............................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.      Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an Artificial
        "Flavor." ..................................................................................................................... 4

II.     Plaintiff Has Not Plausibly Alleged That the Product's Labeling Is Misleading. .......... 7

        A.      Plaintiff has not plausibly alleged that the omission of an "artificially
                flavored" disclosure is likely to mislead reasonable consumers. ....................... 7

        B.      Federal law preempts Plaintiff's claim that Target is required to use the
                term "dl-malic acid" as opposed to malic acid's "generic name." .................. 10

III.    Plaintiff Has Not Stated a Viable Contract or Warranty-Based Claim. ....................... 11

IV.     Plaintiff's Remaining Common-Law Claims Are Also Fatally Defective. .................. 12

V.      Plaintiff Is Not Entitled to Seek Injunctive Relief. .................................................... 14

CONCLUSION ...................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................ 7, 8

*Avon Hardware Co. v. Ace Hardware Corp.,*
998 N.E.2d 1281 (Ill. Ct. App. 2013) ........................................................................ 12

*Beardsall v. CVS Pharm., Inc.,*
953 F.3d 969 (7th Cir. 2020) ...................................................................................... 8

*Benson v. Fannie May Confections Brands, Inc.,*
944 F.3d 639 (7th Cir. 2019) ...................................................................................... 10

*Benson v. Fannie May Confections Brands, Inc.,*
No. 17-3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018) ...................................... 14

*Bober v. Glaxo Wellcome PLC,*
246 F.3d 934 (7th Cir. 2001) ...................................................................................... 13

*Brodsky v Aldi Inc.,*
No. 20-7632, 2021 WL 4439304 (N.D. Ill. Sept. 28, 2021) ...................................... 8

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
761 F.3d 732 (7th Cir. 2014) ...................................................................................... 14

*Cleary v. Philip Morris Inc.,*
656 F.3d 511 (7th Cir. 2011) ...................................................................................... 13

*Connick v. Suzuki Motor Co.,*
675 N.E.2d 584 (Ill. 1996) .......................................................................................... 13

*Davis v. SPSS, Inc.,*
385 F. Supp. 2d 697 (N.D. Ill. 2005) ........................................................................ 13

*Freeman v. MAM USA Corp.,*
528 F. Supp. 3d 849 (N.D. Ill. 2021) ........................................................................ 15

*Harris v. Mondelēz Global LLC,*
No. 19-2249, 2020 WL 4336390 (E.D.N.Y. July 28, 2020) ...................................... 8

*Harris v. Topco Assocs., LLC,*
538 F. Supp. 3d 826 (N.D. Ill 2021) .......................................................................... 11

*Hu v. Herr Foods, Inc.*,
251 F. Supp. 3d 813 (E.D. Pa. 2017) .................................................................6, 7

*Ivie v. Kraft Foods Global, Inc.*,
961 F. Supp. 2d 1033 (N.D. Cal. 2013) ..............................................................6, 7

*Manley v. Hain Celestial Grp., Inc.*,
417 F. Supp. 3d 1114 (N.D. Ill. 2019) ................................................................8, 12

*McNair v. Synapse Grp., Inc.*,
672 F.3d 213 (3d Cir. 2012)......................................................................................15

*Mednick v. Precor, Inc.*,
No. 14-3624, 2016 WL 5390955 (N.D. Ill. Sept. 27, 2016)............................14, 15

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
435 N.E.2d 443 (Ill. 1982) ........................................................................................12

*Myers v. Wakefern Food Corp.*,
No. 20-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022).........................................5

*Ollivier v. Alden*,
634 N.E.2d 418 (Ill. Ct. App. 1994) .........................................................................13

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) .....................................................................................14

*Phillips v. DePaul Univ.*,
19 N.E.3d 1019 (Ill. Ct. App. 2014) ...........................................................................8

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ........................................................................12

*Santiful v. Wegmans Food Mkts., Inc.*,
No. 20-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ........................................5

*Schiesser v. Ford Motor Co.*,
No. 16-730, 2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) .......................................12

*Simic v. City of Chicago*,
851 F.3d 734 (7th Cir. 2017) .....................................................................................14

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976).....................................................................................................15

*Spector v. Mondelēz Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) .....................................................................8, 11

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) ..................................................................10

*Turnipseed v. Simply Orange Juice Co.*,
  No. 20-8677, 2022 WL 6574143 (S.D.N.Y. Mar. 4, 2022)......................5

*Victor v. R.C. Bigelow, Inc.*,
  No. 13-2976, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ...................9

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................5

*Warth v. Seldin*,
  422 U.S. 490 (1975)................................................................................15

*Willard v. Tropicana Mfg. Co.*,
  --- F. Supp. 3d ----, 2021 WL 6197079 (N.D. Ill. 2021)................8, 9, 11

*Wynn v. Topco Assocs., LLC*,
  No. 19-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .....................9

**Statutes**

21 U.S.C. § 337.................................................................................................10

Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*....................................4

**Other Authorities**

21 C.F.R. § 101.4 .........................................................................................2, 11

21 C.F.R. § 101.22 ................................................................................... *passim*

21 C.F.R. § 170.3 ....................................................................................3, 5, 6, 7

21 C.F.R. § 184.1069 ..................................................................................6, 11

FDA, *Food Labeling; Declaration of Ingredients*,
  56 Fed. Reg. 28592 (June 21, 1991) ...................................................3, 6

## INTRODUCTION

This lawsuit challenges Target's purported failure to disclose that its Market Pantry Fruit Punch liquid beverage concentrate (the "Product") contains "artificial flavors." Notably, Plaintiff does not, and cannot, point to any representation that the Product is free of artificial flavors. Nor does she allege that reasonable consumers expect fruit punch—a bright-red, vaguely fruit-flavored drink reminiscent of children's birthday parties—to be made from real fruits or free of artificial flavors. Plaintiff nonetheless alleges that the presence of malic acid (which she baselessly characterizes as an "artificial flavor") requires Target to disclose the presence of artificial flavors on the labeling and that the omission of this supposed fact from an FDA-mandated regulatory disclosure on the product label is misleading. Plaintiff's lawsuit is entirely implausible.

Plaintiff's factual allegations do not establish that the malic acid in the Product acts as a "flavor" or that it is "artificial." Although Plaintiff alleges that Target uses malic acid to "create, enhance, simulate, and/or reinforce the tart, sweet, and fruity taste that consumers associate with fruit punch" (Compl. ¶ 20), that boilerplate recitation of the FDA regulation does not establish that malic acid provides the Product's "characterizing flavor"—as Plaintiff must plausibly allege to establish that it is an "artificial flavor." Indeed, given Plaintiff's admission that malic acid provides "tartness" (*id.* ¶ 12), it is far more plausible that it acts as a "flavor enhancer" or a "pH balancer," which are not "flavors" and are therefore not subject to the FDA's flavor regulations. And even if Plaintiff *had* alleged that the malic acid in the Product acts as a "flavor," which she has not, her bare-bones allegation that "[l]aboratory analysis concluded the Product contains dl-malic acid" (*id.* ¶ 17) is woefully insufficient to establish that the malic acid in the Product is "artificial."

Moreover, even if Plaintiff *had* plausibly alleged that the malic acid in the Product acts as a "flavor" and that it is "artificial," her lawsuit still fails because Target does not claim that the

Product—which is a pocket-sized, zero-calorie, shelf-stable liquid beverage concentrate—is free of "artificial flavors." Plaintiff attempts to circumvent this result by arguing that the FDA-mandated statement "natural flavor with other natural flavor" implies that the Product contains "only natural flavors." Compl. ¶ 21. But neither that statement nor the omission of an "artificially flavored" disclosure renders the labeling false or misleading. At the *absolute* most, it establishes a technical violation of an FDA regulation, which is insufficient to support a consumer fraud claim.

Nor is Plaintiff correct that Target misleads consumers by failing to label the malic acid in the Product as "dl-malic acid." To the contrary, the FDA regulations expressly require Target to label malic acid using its "common or usual name"—which is simply "malic acid." 21 C.F.R. § 101.4(a)(1). Many courts have agreed that the FDA regulations preempt any claim premised on the use of the term "malic acid" in the ingredient list. This Court should do the same here.

Setting aside these core flaws, Plaintiff's ancillary claims all suffer from independent, fatal defects that require their dismissal. And regardless of whether Plaintiff can seek damages on behalf of putative class members, she cannot seek injunctive relief: now that she is aware that the Product allegedly contains artificial flavors, there is no further risk that she will be "deceived." Plaintiff's lawsuit is flawed beyond repair, and this Court should dismiss it with prejudice.

## **RELEVANT REGULATORY BACKGROUND**

The FDA has issued a regulation, 21 C.F.R. § 101.22, that governs the use and labeling of flavoring agents in food products. If a product label includes a representation about the product's "characterizing flavor" (*e.g.*, strawberry), and the characterizing flavor comes from "natural flavor" derived from the characterizing food ingredient, the regulation directs the manufacturer to state that the product is "strawberry flavored" or "natural strawberry flavored." 21 C.F.R. § 101.22(i)(1)(i). If the product contains both a characterizing flavor derived from the characterizing

ingredient and "other natural flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to add the nomenclature "with other natural flavor." *Id.* § 101.22(i)(1)(iii). But if the food "contains any *artificial* flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to describe the product as "artificially flavored." *Id.* § 101.22(i)(2) (emphasis added).

Critically, these regulations apply only to "flavoring agents and adjuvants," which are "[s]ubstances added to impart or help impart a taste or aroma in food." *Id.* § 170.3(o)(12). The regulations do not apply to "flavor enhancers," which are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11). Because "flavor enhancers are not flavorings," the FDA has made clear that they need not be disclosed on the front label but instead "must be declared in the ingredient list by their common or usual names." FDA, *Food Labeling; Declaration of Ingredients*, 56 Fed. Reg. 28592, 28598 (June 21, 1991) (noting that the "FDA's regulations describing the various functional effects of human food ingredients differentiate between 'flavoring agents and adjuvants' and 'flavor enhancers'").

## ALLEGATIONS OF THE COMPLAINT

Target sells a variety of liquid water enhancers, including the Product, under its Market Pantry line. These products are shelf-stable, sugar-free, pocket-sized plastic squeeze bottles that consumers can squeeze into plain water to enhance its taste. These products come in many varieties, including the bright red "Fruit Punch" variety at issue here.

The Product derives its signature taste from natural flavors, which it discloses (along with all other ingredients) in the ingredient list on the back of each package. *See* Compl. ¶ 9. Consistent with the FDA regulations, Target accurately states in a mandatory regulatory disclosure on the

front of each label the Product contains "Natural Flavor with Other Natural Flavor." *See id.* ¶ 1. The Product also contains malic acid, which balances the product's acidity and which Target discloses in the ingredient list. *See id.* ¶ 9; *see also id.* ¶ 12 (admitting that malic acid "provides . . . tartness"). Plaintiff alleges, however, that Target "adds the artificially sourced ingredient of dl-malic acid to the Product" not to enhance its tartness, but "to create, enhance, simulate, and/or reinforce the tart, sweet, and fruity taste that consumers associate with fruit punch." *Id.* ¶ 20. Plaintiff also alleges that Target misleads consumers by using only the "generic name" for malic acid in the ingredient list and failing to "tell consumers if it used the artificial version." *Id.* ¶ 16.

Based on these allegations, Plaintiff asserts claims for: (1) violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*; (2) "violations of state consumer fraud acts"; (3) breach of contract; (4) "breaches of express warranty, implied warranty of merchantability and Magnuson Moss Warranty Act"; (5) negligent misrepresentation; (6) common-law fraud; and (7) unjust enrichment. *See* Compl. ¶¶ 78–119 (capitalization omitted). Plaintiff asserts these claims on behalf of a putative Illinois class, as well as a putative "Consumer Fraud Multi-State Class." Compl. ¶ 70. She seeks several remedies on behalf of these class members, including damages, restitution, and injunctive relief. *See id.* at 14 (Jury Demand and Prayer for Relief).

## ARGUMENT

## I. Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an Artificial "Flavor."

Plaintiff's lawsuit is premised on her allegation that the malic acid in the Product constitutes an "artificial flavor." That requires Plaintiff to establish not only that the malic acid is "artificial," but also that it acts as a "flavor"—which, in turn, requires her to plausibly allege that it "simulates, resembles, or reinforces the *characterizing flavor*" of the product. 21 C.F.R. § 101.22(i)(1) (emphasis added); *see also id.* § 101.22(i) (noting that the "primary recognizable

flavor" of a product, as depicted through words or vignettes, is its "characterizing flavor"). [1]

In other words, it is not enough for Plaintiff to allege that malic acid may incidentally affect the Product's taste or "amplify whatever characterizing flavor it has from another source." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013). Rather, to establish that malic acid acts as an "artificial flavor," Plaintiff must plausibly allege that it "give[s] the product an *original taste*." *Id.* (emphasis added). Plaintiff has not done so.

Plaintiff's allegations actually suggest that Target uses malic acid as a "flavor enhancer"— *i.e.*, a "substance[] added to supplement, enhance, or modify the original taste and/or aroma of the food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11). As Plaintiff admits, malic acid "provides . . . tartness" in foods. Compl. ¶ 12. But that does not mean that malic acid provides "the tart, sweet, and fruity taste that consumers associate with fruit punch." *Id.* ¶ 20. Even if tartness may be one component of fruit punch's flavor profile, that does not mean that tartness is the "primary recognizable flavor" of fruit punch, as would be required for it to function as the product's "characterizing flavor." 21 C.F.R. § 101.22(i).

In other words, even if Plaintiff were correct that malic acid increases the Product's tartness, that establishes only that it "enhances" and "modifies" the characteristic fruity flavor of

---

[1] Plaintiff alleges that "[l]aboratory analysis" confirmed that the Product contains allegedly "artificial" dl-malic acid. Compl. ¶ 17. But this bare-bones allegation "fails to provide any details whatsoever about what this laboratory test entailed." *Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000, at \*4 (S.D.N.Y. Mar. 1, 2022) (dismissing lawsuit filed by Plaintiff's counsel premised on allegedly "artificial" vanilla flavor). For example, Plaintiff does not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc." *Id.* And many courts have agreed that similarly threadbare allegations about "laboratory testing" are "insufficient to support . . . otherwise conclusory statements as to the ingredients of the Product." *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955, at \*4 (S.D.N.Y. Jan. 28, 2022); *see also, e.g.*, *Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 6574143, at \*4 (S.D.N.Y. Mar. 4, 2022) (similar). Here too, Plaintiff's vague reliance on "laboratory analysis" does not establish that the malic acid in the Product is "artificial"—as Plaintiff must plausibly allege for it to be an "artificial flavor."

fruit punch—which makes it a textbook example of a "flavor enhancer." 21 C.F.R. § 170.3(o)(11). In fact, the FDA has explicitly recognized that malic acid can be used for this purpose.[2] *See* 21 C.F.R. § 184.1069(c). And in drawing a distinction between "flavors" and "flavor enhancers," the FDA has made clear that flavor enhancers are not subject to the FDA's regulations governing the disclosure of natural and artificial flavors. *See* 56 Fed. Reg. at 28598.

Many courts have dismissed similar lawsuits absent plausible allegations that the challenged ingredient served the function the plaintiff claimed it did. For example, in *Ivie v. Kraft Foods Global, Inc.*, the court dismissed a lawsuit alleging that the defendant misrepresented its products as containing "natural flavors" when they contained sodium citrate and potassium citrate, which the plaintiff characterized as "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). "While these substances may be artificial *ingredients*," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* In so holding, the court emphasized that a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor . . . is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)." *Id.* at 1042 (alteration in original).

Similarly, in *Hu v. Herr Foods, Inc.*, the plaintiff alleged that the statement "No Preservatives Added" was false because the products contained citric acid, which the plaintiff characterized as a preservative. 251 F. Supp. 3d 813, 816–17 (E.D. Pa. 2017). The court dismissed this lawsuit, holding that the plaintiff had not plausibly alleged that citric acid actually acted as a preservative in the product. *See id.* at 821–22. In reaching this conclusion, the court rejected the

---

[2] The FDA has also recognized that malic acid can be used as a "pH control agent." 21 C.F.R. § 184.1069(c), *see also id.* § 170.3(o)(23) (defining a "pH control agent" as a "substance[] added to change or maintain acidity or basicity"). Indeed, the USDA has expressly recognized that "[t]he main use of synthetic malic acid is pH adjustment." RJN Ex. 1. And that use is entirely consistent with Plaintiff's allegation that malic acid "provides . . . tartness" to the Product. Compl. ¶ 12.

plaintiff's argument that reasonable consumers would still view citric acid as a preservative "regardless of its functionality—*i.e.*, even if [it] does not actually preserve that particular product." *Id.* at 821. And while the plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products," the court found that these "arguments and speculations are not supported by well-pleaded factual allegations" and that it "need not accept them as true." *Id.* at 822–23.

Here, as in *Ivie* and *Hu*, Plaintiff has not plausibly alleged that the malic acid in the Product acts as a *flavor*, as opposed to a flavor enhancer or a pH balancer. Even if Plaintiff's allegations were sufficient to establish that malic acid *could* act as a "flavor" (which they are not), the "mere possibility" that it functions as a flavor is not enough to state a plausible claim the Product contains "artificial flavors." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Absent any plausible allegation that malic acid provides a "characteristic taste or aroma of its own" and does not merely "enhance" or "modify" other flavors, 21 C.F.R. § 170.3(o)(11), this Court should dismiss Plaintiff's lawsuit.

## II. **Plaintiff Has Not Plausibly Alleged That the Product's Labeling Is Misleading.**

### A. **Plaintiff has not plausibly alleged that the omission of an "artificially flavored" disclosure is likely to mislead reasonable consumers.**

While Plaintiff alleges that the FDA-mandated statement "natural flavor with other natural flavors" led her to "expect[] only natural flavors" (Compl. ¶ 21), she does not—and cannot—identify any statement on the labeling that the Product is "all natural" or free of artificial flavors. Instead, Plaintiff alleges that Target "omitt[ed] any reference to artificial flavor on the front and ingredient list" of the Product. *Id.* But Plaintiff has not plausibly alleged that the omission of an "artificial flavor" disclosure is "likely to mislead reasonable consumers"—as she must to prevail

on her consumer fraud claims under Illinois law.[3] *Brodsky v Aldi Inc.*, No. 20-7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021).

"[W]hile an omission of material fact can satisfy the requirements for pleading fraud under the ICFA, Illinois courts are always watchful that the [ICFA] not be used to transform nondeceptive and nonfraudulent omissions into actionable affirmations." *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (citation and internal quotation marks omitted). To that end, "an omission is not actionable as fraud if it gives rise to 'an incomplete' as opposed to an affirmatively 'false impression.'" *Id.* (quoting *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1030 (Ill. Ct. App. 2014)); *see also Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1119 (N.D. Ill. 2019) (noting that a labeling claim is not "actionable under the ICFA" simply because it is "insufficiently specific").

That principle is fatal to Plaintiff's case. It is beyond dispute that Target does not represent that the Product is "all natural" or free of artificial ingredients. Moreover, common sense—which this Court must apply in ruling on a motion to dismiss (*see Iqbal*, 556 U.S. at 679)—makes clear that a reasonable consumer would not assume that a shelf-stable, bright red "fruit punch" concentrate is free of artificial ingredients. Absent any *affirmative* representation that the Product is "all natural" or free of artificial ingredients, the omission of an "artificial flavor" disclosure would not change reasonable consumers' expectations about the ingredients in the Product.

*Willard v. Tropicana Manufacturing Co.*, --- F. Supp. 3d ----, 2021 WL 6197079 (N.D. Ill.

---

[3] Although Plaintiff also asserts a claim for "violations of state consumer fraud acts," these statutes—like virtually all state consumer fraud statutes—require Plaintiff "to prove that the relevant labels are likely to deceive reasonable consumers." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020); *see also Harris v. Mondelēz Global LLC*, No. 19-2249, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) ("Although Plaintiffs allege violations of consumer protection statutes from forty states and the District of Columbia, the parties agree that the critical issue for resolving this motion is whether a reasonable consumer would be misled . . . .").

2021), is instructive. There, the plaintiffs alleged that ten Tropicana juice products were mislabeled because they contained malic acid but failed to disclose that they contained artificial flavor. *Id.* at *1. While Judge Valderrama found that plaintiffs had plausibly alleged that the presence of malic acid rendered the phrase "100% Juice Apple Juice" misleading, he dismissed the plaintiffs' claim that it rendered the phrase "Trop 50 Farmstand Apple Juice" misleading. *See id.* at *12. In so holding, he emphasized that the product's name, along with the statement "50% less sugar & calories than apple juice," "undermines Plaintiffs' claims that the name of the Product and the pictures of apples could mislead consumers into believing that the Product only contains natural ingredients." *Id.* And Judge Valderrama similarly dismissed the plaintiffs' claim with respect to eight other juices, finding that the plaintiffs' allegation "that each Product contains malic acid and fails to disclose that fact on the front labels" was insufficient to establish that "a reasonable consumer would be deceived by the labels." *Id.*

Here too, the Product's labeling is devoid of any representations that even *arguably* suggest it is "natural" or free of artificial ingredients. To the contrary, the bright red color and the name "Fruit Punch" strongly suggest to reasonable consumers that the product is *not* "natural." Just as in *Willard*, Plaintiff's allegation that the Product contains malic acid but fails to disclose that it is "artificially flavored" does not establish consumer deception.

Plaintiff attempts to plead around this argument by alleging that 21 C.F.R. § 101.22 requires Target to disclose the presence of artificial flavor on the front label. *See* Compl. ¶ 8. But this argument fails, as Plaintiff does not allege—let alone with any degree of plausibility—"that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations." *Wynn v. Topco Assocs., LLC*, No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021); *see also, e.g.*, *Victor v. R.C. Bigelow,*

*Inc.*, No. 13-2976, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) ("[T]he ultimate question . . . is what a reasonable consumer expects, which may have absolutely no relation to FDA regulations."). Absent any plausible allegation that consumers are aware of 21 C.F.R. § 101.22 or that it guides their expectations about the presence of artificial flavors, Plaintiff has not plausibly alleged that the omission of an "artificial flavor" disclosure is misleading.

Finally, even if Plaintiff were correct that Target's alleged failure to disclose the presence of "artificial flavors" violated 21 C.F.R. § 101.22 (which she is not), the Federal Food, Drug & Cosmetic Act ("FDCA") does not permit private plaintiffs to police alleged violations of FDA regulations. *See* 21 U.S.C. § 337(a); *see also, e.g.*, *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645–48 (7th Cir. 2019) (affirming dismissal of ICFA claim and noting that "[t]he FDCA does not create a private right of action"). It is accordingly irrelevant whether Target's alleged failure to disclose the presence of "artificial flavor" in the Product might violate 21 C.F.R. § 101.22, as Congress has deliberately chosen not to allow private plaintiffs to enforce that regulation. Absent any plausible allegation that Target's labeling is deceptive, Plaintiff cannot state a consumer fraud claim premised on a purported violation of 21 C.F.R. § 101.22.

## B. Federal law preempts Plaintiff's claim that Target is required to use the term "dl-malic acid" as opposed to malic acid's "generic name."

In addition to alleging that Target misleads consumers by failing to label the Product as "artificially flavored," Plaintiff also alleges that, "[s]ince there are natural and artificial types of malic acid, Defendant is required to tell consumers if it used the artificial version, instead of using only the generic name." Compl. ¶ 16. But the FDA regulations expressly permit Target to use the phrase "malic acid" in the ingredient list, and they accordingly preempt any claim that Target misleads consumers by doing so. *See generally Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (noting that the Nutrition Labeling & Education Act ("NLEA") preempts state-law

10

claims that would impose labeling requirements that are "not identical to the labeling requirements imposed on such products by federal law"); *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill 2021) ("States can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements.") (citation omitted).

The FDA regulations require manufacturers to declare ingredients on the label using their "common or usual name." 21 C.F.R. § 101.4(a). Critically, the FDA regulations also provide that "[m]alic acid . . . is the *common name* for 1-hydroxy-1, 2-ethanedicarboxylic acid." 21 C.F.R. § 184.1069(a) (emphasis added). And consistent with the FDA regulations, many courts in Illinois and elsewhere have agreed that "claims based on the theory of listing 'malic acid' instead of 'dl-malic acid' on the ingredient list are preempted." *Willard*, 2021 WL 6197079, at *9 (compiling numerous cases that "have sided with [the defendant's] position" that this theory is preempted). Here too, Plaintiff's claim that Target cannot use the "generic name" for malic acid runs headlong into the FDA's requirement that Target declare malic acid using its "common or usual name." 21 C.F.R. § 101.4(a). Just as in *Willard*, this theory is squarely preempted by federal law.

## III.     Plaintiff Has Not Stated a Viable Contract or Warranty-Based Claim.

In addition to her consumer fraud claims, Plaintiff also asserts a claim for "Breaches of Express Warranty, Implied Warranty of Merchantability, and Magnuson Moss Warranty Act," as well as a separate claim for breach of contract. *See* Compl. ¶¶ 88–107. But when a plaintiff asserts that a defendant's supposedly false advertising constitutes a breach of warranty or a breach of contract, she cannot prevail on that claim unless she establishes that the advertising was likely to mislead a reasonable consumer. *See, e.g.*, *Spector*, 178 F. Supp. 3d at 674. Because Plaintiff has not plausibly alleged that Target's labeling is deceptive, her contract and warranty-based claims necessarily fail as well. And because "a cause of action under the Magnuson Moss Act is

dependent on the existence of an underlying viable state-law warranty claim," Plaintiff's inability to state a breach of warranty claim law also dooms her MMWA claim. *Schiesser v. Ford Motor Co.*, No. 16-730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016). This Court should accordingly dismiss Plaintiff's contract and warranty-based claims.

## IV.     __Plaintiff's Remaining Common-Law Claims Are Also Fatally Defective.__

Plaintiff also asserts tag-along claims for negligent misrepresentation, common-law fraud, and unjust enrichment. *See* Compl. ¶¶ 108–19. Absent any plausible claim that the Product's labeling is deceptive or that it materially misled Plaintiff, the negligent misrepresentation and fraud claims necessarily fail as well. *See generally Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287–88 (Ill. Ct. App. 2014) (fraud and negligent misrepresentation claims require false statement). And in any event, all three claims fail for separate and independent reasons.

Negligent Misrepresentation. In Illinois, "[t]he economic loss rule generally prohibits recovery in tort for solely economic loss." *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 824 (N.D. Ill. 2016) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982)). Here, Plaintiff does not allege that she suffered any personal injury or property damage; instead, her losses consist of the money she allegedly spent. *See* Compl. ¶ 114 ("Plaintiff and class members would not have purchased the Product or paid as much if the true facts have been known, suffering damages."). But even if Plaintiff were correct that Target misrepresented the Product as free of artificial flavors, she can only recover in contract—not in tort. *See Moorman*, 435 N.E.2d at 450 ("The remedy for economic loss, loss relating to a purchaser's disappointed expectations . . . lies in contract."); *Manley*, 417 F. Supp. 3d at 1120–21 (applying *Moorman* to dismiss consumer's negligent misrepresentation claim).

Common-Law Fraud.  Under Illinois law, a claim for common-law fraud requires Plaintiff to establish not only that Target "intentionally made a false statement of material fact," but also that "the statement was made for the purpose of inducing reliance thereon." *Ollivier v. Alden*, 634 N.E.2d 418, 424 (Ill. App. Ct. 1994).  In other words, scienter, *i.e.*, knowledge that the statement is false, "is an essential element of common-law fraud." *Id.*  And Plaintiff must allege not just that Target's conduct *might* constitute fraud, but that "fraud is the necessary or probable inference" from the facts she has alleged. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996).

Here, Plaintiff's complaint is devoid of any allegation that Target intentionally mislabeled the Product to mislead consumers into believing that it is free of artificial flavors.  While she alleges that Target "sold more of the Product and at higher prices than it would have in the absence of" its alleged mislabeling (Compl. ¶ 26), that allegation does not establish fraudulent intent.  To the contrary, courts have made clear that a defendant's alleged desire to increase profits and sales cannot establish scienter, as these are "basic motivations not only of fraud, but of running a successful corporation." *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005).  And while Plaintiff alleges that Target's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations" (Compl. ¶ 118), this circular allegation does not substantiate Plaintiff's unsupported assertion that Target *intended* to mislead consumers.

Unjust Enrichment.  Finally, Plaintiff asserts a claim for unjust enrichment, which alleges—in a single sentence—that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members." Compl. ¶ 119.  But as the Seventh Circuit has made clear, any such claim "will stand or fall" with Plaintiff's substantive claim for consumer fraud. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir.

13

2001) (finding that, "in the absence of any deception on the part of the defendants," the required elements for an unjust enrichment claim cannot be satisfied).  Because Plaintiff cannot state a plausible consumer fraud claim, her unjust enrichment claim must also fail.

**V.      Plaintiff Is Not Entitled to Seek Injunctive Relief.**

Even if her claims were sufficiently plausible to survive dismissal (which they are not), Plaintiff lacks standing to seek injunctive relief.  To have standing to pursue injunctive relief, Plaintiff must allege that she faces "a real and immediate threat of *future* injury" from Target's conduct.  *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (emphasis added) (internal quotation marks omitted).  As a general rule, "a plaintiff who is aware of a defendant's deceptive practices is not likely to be harmed by them in the future, and therefore lacks standing to pursue injunctive relief."  *Benson v. Fannie May Confections Brands, Inc.*, No. 17-3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014)); *see also Mednick v. Precor, Inc.*, No. 14-3624, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (collecting cases).  Here, Plaintiff expressly alleges that, had she known of Target's purported deception, she "would not have bought the Product or would have paid less for it."  Compl. ¶ 27.  But since Plaintiff "is now aware of [Target's] sales practices, [she] is not likely to be harmed by the practices in the future."  *Camasta*, 761 F.3d at 741.

The fact that Plaintiff purports to represent a class of consumers does not change this result. The Seventh Circuit has made clear that "[s]tanding cannot be acquired through the back door of a class action" and that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members."  *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citation omitted). Rather, the "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . .

14

. which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Thus, even if other class members may not know that the Product contains purportedly "artificial flavors," the "risk of future harm to proposed class members" is not enough to confer Plaintiff with Article III standing. *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 857 (N.D. Ill. 2021); *see also Mednick*, 2016 WL 5390955, at *9 (noting that "the named Plaintiffs 'cannot rely on the prospect that *other* consumers may be deceived' to boost their own standing") (citation omitted).

Plaintiff's allegation that she "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its abilities, attributes, and/or composition" (Compl. ¶ 68) is similarly unavailing. This statement does not establish that Plaintiff faces a risk of future injury; to the contrary, it establishes that she will *not* purchase the Product so long as its ingredients and labeling remain unchanged, which makes clear that there is no risk of future harm. In other words, the possibility that Plaintiff and other class members "may, one day, become . . . customers once more" is not sufficient to establish standing. *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 224–25 (3d Cir. 2012). This Court should accordingly dismiss Plaintiff's claims to the extent they seek injunctive relief.

## **CONCLUSION**

This Court should dismiss Plaintiff's lawsuit with prejudice and without leave to amend.

Dated:  June 3, 2022

Respectfully submitted,

By: /s/ Dean N. Panos
    Dean N. Panos (ARDC No. 6203600)
    Jenner & Block LLP
    353 N. Clark Street
    Chicago, IL 60654-3456
    Telephone:  (312) 923-2765
    Facsimile:  (312) 527-0484
    dpanos@jenner.com

    Attorneys for Defendant
    Target Corporation

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that a copy of the foregoing document was filed on June 3, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  June 3, 2022                    By:  <u>      /s/ Dean N. Panos      </u>
                                                    Dean N. Panos