# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA GOUWENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 3:22-cv-50016<br><br>The Honorable Iain D. Johnston |

## REPLY IN SUPPORT OF TARGET CORPORATION'S
## MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Target Corporation

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.     Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an "Artificial Flavor." ................................................................................................................. 3

    A.     Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as a "Flavor." ......... 3

    B.     Plaintiff Has Not Plausibly Alleged That the Malic Acid Is "Artificial." .......... 7

II.     Plaintiff Has Not Plausibly Alleged That the Product's Labeling Is Misleading. ........... 8

III.     Plaintiff's Breach of Express Warranty and Common-Law Fraud Claims Also Fail. ..................................................................................................................... 11

IV.     Absent a Plausible Claim, Plaintiff Cannot Seek Injunctive Relief ............................. 12

CONCLUSION .................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 1, 2, 11

*Beardsall v. CVS Pharm., Inc.*,
   953 F.3d 969 (7th Cir. 2020) ................................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 2

*Branca v. Bai Brands, LLC*,
   No. 18-757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ................................................... 6

*Cerretti v. Whole Foods Mkt. Grp., Inc.*,
   No. 21-5516, 2022 WL 1062793 (N.D. Ill. Apr. 8, 2022) ................................................. 10

*Davis v. SPSS, Inc.*,
   385 F. Supp. 2d 697 (N.D. Ill. 2005) ................................................................................ 11

*Hayes v. Gen. Mills, Inc.*,
   No. 19-5626, 2021 WL 3207749 (N.D. Ill. July 29, 2021) ................................................. 6

*Hu v. Herr Foods, Inc.*,
   251 F. Supp. 3d 813 (E.D. Pa. 2017) .................................................................................. 6

*Ivie v. Kraft Foods Global, Inc.*,
   961 F. Supp. 2d 1033 (N.D. Cal. 2013) .............................................................................. 6

*Lam v. Gen. Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) .............................................................................. 9

*Manley v. Hain Celestial Grp., Inc.*,
   417 F. Supp. 3d 1114 (N.D. Ill. 2019) ................................................................................ 8

*Missouri Pet Breeders Ass'n v. County of Cook*,
   106 F. Supp. 3d 908 (N.D. Ill. 2015) ................................................................................ 12

*Myers v. Wakefern Food Corp.*,
   No. 20-8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ................................................... 7

*Noah v. Enesco Corp.*,
   911 F. Supp. 305 (N.D. Ill. 1995) ..................................................................................... 12

*Noohi v. Kraft Heinz Co.*,
    No. 19-10658, 2020 WL 5554255 (C.D. Cal. July 20, 2020)......................................................6

*Ollivier v. Alden*,
    634 N.E.2d 418 (Ill. App. Ct. 1994) ........................................................................................11

*Santiful v. Wegmans Food Mkts., Inc.*,
    No. 20-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ........................................................7

*Secure Data Techs, Inc. v. Presidio Network Solutions Grp., LLC*,
    No. 20-133, 2020 WL 5910168 (S.D. Ill. Oct. 6, 2020) ..........................................................12

*Sims v. Campbell Soup Co.*,
    No. 18-668, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018) ......................................................8

*Spector v. Mondelēz Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) ........................................................................................8

*Victor v. R.C. Bigelow, Inc.*,
    No. 13-2976, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ..................................................10

*Viggiano v. Hansen Natural Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ...............................................................................3, 4, 9

*Wach v. Prairie Farms Dairy, Inc.*,
    No. 21-2191, 2022 WL 1591715 (N.D. Ill. May 19, 2022)...............................................10, 11

*Willard v. Tropicana Manufacturing Co.*,
    577 F. Supp. 3d 814 (N.D. Ill. 2021) ........................................................................................8

*Wynn v. Topco Assocs., LLC*,
    No. 19-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ....................................................10

*Zahora v. Orgain LLC*,
    No. 21-705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ..........................................................3

**Other Authorities**

21 C.F.R. § 101.22 ................................................................................................................ *passim*

21 C.F.R. § 170.3 ...............................................................................................................4, 5,  6

21 C.F.R. § 184.1069 ......................................................................................................................5

FDA, *Food Labeling: Declaration of Ingredients*,
    56 Fed. Reg. 28592 (June 21, 1991)..........................................................................................4

**INTRODUCTION**

In her opposition brief, Plaintiff doubles down on her implausible claim that Target misleads reasonable consumers by failing to describe its Market Pantry Fruit Punch liquid beverage concentrate (the "Product") as "artificially flavored."[1] But Plaintiff has not pleaded any facts establishing that the malic acid in the Product is "artificial" or that it functions as a "flavor"— let alone with the plausibility required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Nor has she plausibly alleged that the absence of the phrase "artificially flavored" leads reasonable consumers to believe that the Product—a pocket-sized, shelf-stable liquid beverage concentrate—is free of artificial ingredients. She has not come close to stating a plausible claim against Target.

To establish that malic acid acts as an "artificial flavor," Plaintiff must plausibly allege that it provides the Product with its "characterizing flavor." 21 C.F.R. § 101.22(i)(2). Plaintiff attempts to satisfy this burden by alleging that Target uses malic acid to provide the "sweet, fruity, and tart taste that consumers associate with fruit punch." First Am. Compl. ("FAC") ¶ 52. But given her allegation that malic acid contributes to the flavor profile of twenty separate fruits, it is utterly implausible that it "simulates, resembles or reinforces the characterizing flavor" of *any* fruit—including those that make up the flavor of "fruit punch." 21 C.F.R. § 101.22(i)(2). That is particularly true in light of the FDA's pronouncement that "fruit punch" may have no "primary recognizable flavor" at all. *Id.* § 101.22(i)(3)(iii). And even if Plaintiff *had* plausibly alleged that malic acid acts as a flavor (which she has not), she has not alleged any facts to support her conclusory allegation that the malic acid in the Product is "artificial."

---

[1] Plaintiff abandons her claim that Target misleads consumers by using the "generic name" for malic acid in lieu of its "specific name" (*i.e.*, "dl-malic acid"). *See* Opp'n at 1 n.1.

1

Absent any plausible allegation that the malic acid in the Product is "artificial" or that it acts as a "flavor," Plaintiff has not stated a plausible claim that Target fails to disclose the presence of "artificial flavors" in the Product. But even if she *had* plausibly alleged that malic acid acts as an "artificial flavor" (which she has not), her lawsuit still fails because she has not plausibly alleged that Target's labeling misleads reasonable consumers into believing that the Product is free of artificial flavors. Critically, Plaintiff does not—and cannot—dispute that Target does not expressly represent that the Product is free of artificial flavors. Plaintiff attempts to sidestep this fact by arguing that the FDA-mandated statement "Natural Flavor with Other Natural Flavor" implies the absence of artificial flavors. FAC ¶ 58. But neither that statement nor the omission of an "artificially flavored" disclosure renders the labeling false or misleading. Even if Plaintiff were correct that Target's labeling technically violates an FDA regulation (which she is not), that does not amount to a plausible consumer fraud claim.

Plaintiff's consumer fraud claims, as well as her tag-along claims for fraud and breach of express warranty, are flawed beyond repair. This Court should dismiss her lawsuit with prejudice.

## ARGUMENT

Rule 12(b)(6) requires Plaintiff to plead "enough facts" to "nudge[]" her "claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678 (emphasizing that this standard demands "more than a sheer possibility that a defendant has acted unlawfully"). For that reason, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiff's allegations do not satisfy this standard. They establish—at most—the "sheer possibility" that the malic acid in the Product is "artificial" and that it acts as a "flavor." *Id.* And

2

even if Plaintiff's allegations plausibly established that the malic acid in the Product acts as an "artificial flavor" (which they do not), they do not establish that the omission of an "artificially flavored" disclosure is likely to mislead reasonable consumers—particularly absent any express representation that the Product is free of artificial flavors. Even at the pleading stage, this Court can—and should—determine that Target's labeling "is not misleading as a matter of law." *Zahora v. Orgain LLC*, No. 21-705, 2021 WL 5140504, at *3 (N.D. Ill. Nov. 4, 2021).

I. **Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as an "Artificial Flavor."**

    A. **Plaintiff Has Not Plausibly Alleged That Malic Acid Acts as a "Flavor."**

The FDA regulation governing the use and labeling of flavoring agents, 21 C.F.R. § 101.22, requires manufacturers like Target to describe their products as "artificially flavored" only if the food "contains any artificial flavor which simulates, resembles or reinforces the *characterizing flavor*." 21 C.F.R. § 101.22(i)(2) (emphasis added); *see also id.* § 101.22(i) (noting that the "primary recognizable flavor" of a product, as depicted through words or vignettes, is its "characterizing flavor"). Thus, to establish that malic acid acts as an "artificial flavor," she must plausibly allege that it "give[s] the product an original taste." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013).

Plaintiff asserts "there is no requirement that malic acid provides the Product's characterizing flavor for Plaintiff to plausibly allege . . . that it is an artificial flavor." Opp'n at 8 (citations, internal quotation marks, and alterations omitted). But that requirement flows directly from the text and structure of 21 C.F.R. § 101.22, which requires manufacturers to label their products as "artificially flavored" only if the purported "artificial flavor" serves to "simulate[], resemble[] or reinforce[]" the product's "characterizing flavor." 21 C.F.R. § 101.22(i)(2). And consistent with 21 C.F.R. § 101.22, courts have made clear that a substance is not a "flavor" simply

3

because it affects the taste of the product or "amplif[ies] whatever characterizing flavor it has from another source." *Viggiano*, 944 F. Supp. 2d at 889.[2] All that would establish is that malic acid acts as a "flavor enhancer"—*i.e.*, a "substance[] added to supplement, enhance, or modify the original taste and/or aroma of the food, without imparting a characteristic taste or aroma of its own"—rather than a flavoring agent whose presence would require Target to label the Product as "artificially flavored." 21 C.F.R. § 170.3(o)(11); *see also* FDA, *Food Labeling: Declaration of Ingredients*, 56 Fed. Reg. 28592, 28598 (June 21, 1991) ("[F]lavor enhancers are not flavorings.").

Plaintiff asserts that malic acid acts as an artificial flavor because it is a "core component of [the] fruit components of fruit punch" and serves to "impart taste." Opp'n at 4. But even if one accepts this assertion as true, it does not establish that the malic acid in the Product "simulates, resembles or reinforces the characterizing [fruit punch] flavor"—as Plaintiff must allege to establish that it acts as an "artificial flavor." *Id.* at 8 (alteration in original). At most, these allegations prove only that the malic acid acts as a "flavor enhancer," not an "artificial flavor."

Nor does Plaintiff's generic allegation that malic acid "provid[es] sweetness and tartness" plausibly establish that it "provide[s] the sweet, fruity, and tart taste that consumers associate with fruit punch." FAC ¶¶ 45, 52. To the contrary, Plaintiff's allegations establish that malic acid is a component of virtually every fruit's flavor profile—including the apples, cherries, grapes, oranges, peaches, pears, and pineapples allegedly present in fruit punch, as well as over a dozen other fruits. *See id.* ¶¶ 29, 32. If malic acid is a component of *every* fruit's flavor profile, it cannot be the "characterizing flavor" of *any* fruit—including the fruits allegedly found in "fruit punch." And

---

[2] Plaintiff attempts to distinguish *Viggiano* by arguing that, unlike the acesulfame potassium and sucralose found in the defendant's sodas there, malic acid is part of the flavor profile of the fruits found in fruit punch. *See* Opp'n at 4. But this is a false distinction, as Plaintiff's allegations suggest that the malic acid in the Product serves the exact same function as the acesulfame potassium and sucralose in the sodas at issue in *Viggiano*—*i.e.*, to accentuate *other* fruit flavors.

4

while Plaintiff claims that she "did not allege that malic acid forms part of the flavor profile of virtually every fruit," she admits that "it is the predominant or secondary acid in twenty fruits"—which means it cannot be the "characterizing flavor" of any of those fruits. Opp'n at 8 (internal quotation marks omitted).

Indeed, Plaintiff's allegation that malic acid provides the Product with its "characterizing flavor" is particularly implausible because the FDA has clarified that manufacturers may use the phrase "fruit punch" to refer to "a blend of flavors with no primary recognizable flavor." 21 C.F.R. § 101.22(i)(3)(iii). If the Product has no "primary recognizable flavor," then it is not possible for malic acid to provide the Product with its "characterizing flavor"—as would be necessary for Plaintiff to plausibly allege that it acts as an "artificial flavor." *See* 21 C.F.R. § 101.22(i)(2). Plaintiff claims that the term "fruit punch" is not "appropriately descriptive"—and therefore does not comply with 21 C.F.R. § 101.22(i)(3)(iii)—because it does not disclose that the Product is "artificially flavored." Opp'n at 7. But this argument *assumes* that the malic acid provides the "characterizing flavor" associated with fruit punch generally or with the specific fruits that comprise "fruit punch." Because Plaintiff has not plausibly alleged that malic acid "simulates, resembles or reinforces" the Product's "characterizing flavor," the FDA does not require Target to label the Product as "artificially flavored fruit punch." 21 C.F.R. § 101.22(i)(2).

Separate and apart from its use as a "flavor enhancer," the FDA has recognized—and Plaintiff does not dispute—that malic acid can be used as a "pH control agent." 21 C.F.R. § 184.1069(c); *see also id.* § 170.3(o)(23) (defining a "pH control agent" as a "[s]ubstance[] added to change or maintain active acidity or basicity"). In fact, the USDA has expressly recognized that "[t]he main use of synthetic malic acid is pH adjustment" (RJN Ex. 1), which is entirely consistent with Plaintiff's allegation that malic acid "provid[es] . . . tartness" to the Product. FAC ¶ 45. If

5

malic acid acts as a "pH balancer," as opposed to a "flavor," Plaintiff cannot plausibly allege that the malic acid in the Product functions as an "artificial flavor."

Left without any reasoned basis for her allegation that malic acid acts as a "flavor," Plaintiff points to several district court cases that have held that the functional role of malic acid presents a factual question that cannot be resolved at the pleading stage. *See* Opp'n at 4–5 (compiling cases).[3] But Plaintiff does not even *attempt* to articulate the reasoning of these cases, and multiple courts have dismissed similar cases where the plaintiff's factual allegations failed to establish that the challenged ingredient served the function the plaintiff claimed it did. *See, e.g.*, *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013) (dismissing lawsuit alleging that potassium citrate and sodium citrate functioned as "artificial flavors" and holding that the plaintiffs' allegations failed to establish that "these ingredients are *flavors*, artificial or otherwise"); *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821–23 (E.D. Pa. 2017) (dismissing lawsuit alleging that citric acid acted as an "artificial preservative" and holding that the plaintiff's "arguments and speculations" about its function were "not supported by well-pleaded factual allegations").

Plaintiff notes that *Ivie* and *Hu* involved ingredients other than malic acid (*see* Opp'n at 4), but that is a distinction without a difference. Regardless of what ingredient Plaintiff challenges as "artificial," she bears the burden of alleging facts to substantiate her claim that it acts as a "flavor" and does not simply "enhance" or "modify" other flavors. 21 C.F.R. § 170.3(o)(11). Because Plaintiff has alleged no such facts, she has not stated a plausible claim against Target.

---

[3] Moreover, in many of these cases, the labeling affirmatively stated that the product contained "no artificial flavors." *See, e.g.*, *Hayes v. Gen. Mills, Inc.*, No. 19-5626, 2021 WL 3207749 (N.D. Ill. July 29, 2021); *Noohi v. Kraft Heinz Co.*, No. 19-10658, 2020 WL 5554255 (C.D. Cal. July 20, 2020); *Branca v. Bai Brands, LLC*, No. 18-757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019). These cases are distinguishable from this case, which is premised on the omission of the statement "artificially flavored" rather than an affirmative representation that the Product contains "no artificial flavors." *See infra* § II; *see also* MTD at 9–13.

**B.      Plaintiff Has Not Plausibly Alleged That the Malic Acid Is "Artificial."**

Leaving aside her failure to allege with plausibility that the malic acid in the Product acts as a "flavor," Plaintiff's lawsuit independently fails because she has not plausibly alleged that the malic acid in the Product is "artificial." Although Plaintiff notes in her opposition brief that "artificial" dl-malic acid is synthesized from petroleum (*see* Opp'n at 3), she admits that malic acid also "occurs naturally in various fruits." FAC ¶ 45. And while Plaintiff alleges that "[l]aboratory analysis" confirmed that the Product contains allegedly "artificial" dl-malic acid (*id.* ¶ 56), she provides zero details about "what this laboratory test entailed." *Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (dismissing lawsuit filed by Plaintiff's counsel and noting that the plaintiff did not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."). Plaintiff's bare-bones allegations about "laboratory testing" are "insufficient to support . . . otherwise conclusory statements as to the ingredients of the Product." *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022).

Plaintiff asserts that *Myers* and *Santiful* are distinguishable because the plaintiffs in those cases "inferred the use of artificial vanillin based on a chain of inferences." Opp'n at 3. That is false. In both cases, the plaintiffs alleged that laboratory testing revealed the presence of artificial vanillin, and in both cases the court found the plaintiff's allegations lacking in sufficient detail to render their claims plausible. And while Plaintiff notes that courts in "non-vanilla cases" have "generally accepted plaintiffs' testing allegations which identified DL-Malic Acid" (Opp'n at 3), she articulates no reason that those decisions or correct or why allegedly "artificial" malic acid is

7

any different than allegedly "artificial" vanillin.[4]  Absent any plausible allegation that the malic acid in the Product is "artificial," Plaintiff cannot plausibly allege that it is an "artificial flavor."

## II. Plaintiff Has Not Plausibly Alleged That the Product's Labeling Is Misleading.

Even if Plaintiff had plausibly alleged that the malic acid in the Product acts as an "artificial flavor" (which she has not), her consumer fraud claims fail because she has not identified any affirmative representation on the Product's labeling that implies it is "natural" or free of artificial flavors.  Absent any such labeling claim, no reasonable consumer would assume that a pocket-sized, shelf-stable, bright red flavored liquid beverage concentrate is free of artificial flavors.  Indeed, as Judge Valderrama concluded in *Willard v. Tropicana Manufacturing Co.*, the fact that a product "contains malic acid and fails to disclose that fact on the front labels" is insufficient, absent some *other* affirmative misrepresentation, to establish that "a reasonable consumer would be deceived by the labels."  *Willard*, 577 F. Supp. 3d 814, 834 (N.D. Ill. 2021).  And even if Plaintiff were correct that she and other reasonable consumers seek to avoid "artificial flavors" (*see* Opp'n at 5), that does not mean it would be reasonable for them to *assume* that a liquid beverage concentrate is free of artificial flavors absent an express representation to that effect.

The absence of any affirmative representation that the Product is free of artificial flavors is fatal to Plaintiff's consumer fraud claims.  Illinois law makes clear that "an omission is not actionable as fraud if it gives rise to 'an incomplete' as opposed to an affirmatively 'false impression.'"  *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016); *see also Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1119 (N.D. Ill. 2019) (noting that a

---

[4] Moreover, *Sims v. Campbell Soup Co.*—one of the two cases Plaintiff relies on—is inapposite, as the defendant did not challenge the plaintiff's allegation that the malic acid in its products was "artificial."  *See Sims*, No. 16-668, 2018 WL 7568640, at *4 (C.D. Cal. Sept. 24, 2018) (summarizing the defendant's arguments for dismissal).

8

labeling claim is not "actionable under the ICFA" simply because it is "insufficiently specific"). Here too, the Product's labeling does not affirmatively state that it is free of "artificial flavors." Even if the Product's labeling does not *disclose* the presence of allegedly "artificial flavors," that purported omission is not sufficient to state a plausible consumer fraud claim.[5]

Plaintiff attempts to circumvent this result by arguing that the FDA-mandated statement "Natural Flavor with Other Natural Flavors" amounts to an affirmative representation that the Product is free of artificial flavors. *See* Opp'n at 6. But this argument reflects a fundamental misunderstanding of the FDA's flavor regulations, which require the use of this regulatory disclosure if a product "contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor." 21 C.F.R. § 101.22(i)(1)(iii). And courts have consistently agreed that "FDA regulations permit a food product to be labeled as containing 'natural flavors' even if the ingredients themselves are not all natural." *Viggiano*, 944 F. Supp. 2d at 889; *see also Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102–03 (N.D. Cal. 2012) ("[U]nder 21 C.F.R. § 101.22(i), a product may be labeled as 'fruit flavored' or 'naturally flavored,' even if it does not contain fruit or natural ingredients. So long as that product 'contains natural flavor' which is 'derived from' the 'characterizing food ingredient,' it will not run afoul of the regulation.").

---

[5] Plaintiff does not articulate how her consumer fraud claims on behalf of the "Consumer Fraud Multi-State Class" differ from her consumer fraud claim under the ICFA. Nor could she, as all of these claims hinge on whether Target's labeling is "likely to deceive reasonable consumers." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (noting that the consumer fraud statutes of "twelve different states," including Illinois, all required the plaintiffs "to prove that the relevant labels are likely to deceive reasonable consumers"). And Plaintiff openly admits that there is "no reason not to expect the preferences of the Consumer Fraud Multi-State Class" to mirror those of the Illinois class members she seeks to represent. Opp'n at 9.

Here too, Plaintiff does not—and cannot—dispute that the Product contains natural flavor derived from its characterizing fruit ingredients and other natural flavor that simulates, resembles, or reinforces each product's characterizing flavor. *See* FAC ¶ 60 (ingredient list including "natural flavors"). Even if Plaintiff were correct that the Product contains artificial flavors (which she is not), it is not remotely misleading for Target to disclose that its products contain natural flavor or to use an accurate regulatory disclosure that is mandated by federal law.

It is similarly irrelevant whether the FDA regulations require manufacturers to label products as "artificially flavored" if they contain artificial flavor. Plaintiff has not alleged any facts suggesting that "reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations."[6] *Wynn v. Topco Assocs., LLC*, No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021). Instead of disputing this fact, Plaintiff asserts that consumers' lack of familiarity with the FDA's flavor regulations weighs in favor of requiring manufacturers to identify the presence of artificial flavor. *See* Opp'n at 6. But this makes no sense: if consumers do not interpret the absence of an "artificially flavored" disclosure to suggest that a product is free of artificial flavors, the fact that the FDA regulations might require an "artificially flavored' disclosure has no bearing on how

---

[6] *See also, e.g.*, *Wach v. Prairie Farms Dairy, Inc.*, No. 21-2191, 2022 WL 1591715, at *5 (N.D. Ill. May 19, 2022) ("Insofar as plaintiffs' assertion is meant to show that a reasonable consumer would be aware of these regulations, and thus would expect defendant's Product to be labeled as 'artificially flavored,' the FAC lacks factual allegations to support such an argument."); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21-5516, 2022 WL 1062793, at *4 (N.D. Ill. Apr. 8, 2022) (rejecting the plaintiff's argument that "reasonable consumers were likely to rely on the Food and Drug Administration's definition of milk chocolate" and noting that "average consumers are not likely to be aware of the nuances of the FDA's regulations of a particular food") (citation and internal quotation marks omitted); *Victor v. R.C. Bigelow, Inc.*, No. 13-2976, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) ("[T]he ultimate question . . . is what a reasonable consumer expects, which may have absolutely no relation to FDA regulations.").

reasonable consumers interpret the Product's labeling. Plaintiff does not cite a single case that endorses this illogical argument, and this Court should not be the first to do so.

### III.     Plaintiff's Breach of Express Warranty and Common-Law Fraud Claims Also Fail.

Plaintiff's claims for breach of express warranty and common-law fraud are also fatally flawed. Both claims hinge on Plaintiff's allegation that Target misrepresented the Product as free of "artificial flavors." *See* FAC ¶ 142 (alleging that Target's labeling "warranted to Plaintiff and class members that [the Product's] characterizing or main taste was from natural flavoring ingredients and not artificial flavoring ingredients"); *id.* ¶ 152 (alleging Target "misrepresented . . . that [the Product's] characterizing or main flavors were from natural flavoring ingredients and not artificial flavoring ingredients"). But as explained above, Plaintiff has not plausibly alleged that the Product contains "artificial flavors" or that the Product's labeling—including the phrase "Natural Flavor with Other Natural Flavor"—represented that the Product is free of artificial flavors. *See supra* §§ I–II. Those defects are fatal to her fraud and express warranty claims.[7]

Leaving aside her failure to state a plausible claim of deception, Plaintiff's common-law fraud claim fails because she has alleged no facts suggesting that Target acted with an intent to defraud consumers, as opposed to an ordinary motivation to increase sales and profits. *See Davis v. SPSS, Inc.,* 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005) (noting that a defendant's desire to increase sales and profits does not establish scienter because these are "basic motivations not only of fraud, but of running a successful corporation"). While Plaintiff asserts that Rule 9(b) does not require her to plead scienter with particularity (*see* Opp'n at 9), allegations regarding a defendant's "state

---

[7] *See, e.g.*, *Wach*, 2022 WL 1591715, at *6 (holding that breach of express warranty claim was "premised on the assertion that the Product's labeling is false, deceptive, and misleading" and dismissing this claim absent plausible allegations of consumer deception); *Ollivier v. Alden*, 634 N.E.2d 418, 424 (Ill. App. Ct. 1994) (noting that a claim for common-law fraud requires a "false statement of material fact").

11

of mind" must still be *plausible*. *Iqbal,* 556 U.S. at 683. Because Plaintiff has pleaded no facts that plausibly suggest Target acted with scienter, she has not stated a claim for common-law fraud.

### IV. Absent a Plausible Claim, Plaintiff Cannot Seek Injunctive Relief.

At the end of her opposition brief, Plaintiff claims that Target's "failure to respond to Plaintiff's request for injunctive relief is an abandonment of any arguments in support of their [sic] dismissal." Opp'n at 10. But it is well-established that "[a]n injunction is a remedy, not a cause of action." *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995); *see also Missouri Pet Breeders Ass'n v. County of Cook*, 106 F. Supp. 3d 908, 927 (N.D. Ill. 2015) (same). And it is equally well-established that, absent a viable underlying claim, a plaintiff is not entitled to seek injunctive relief. *See, e.g.*, *Secure Data Techs, Inc. v. Presidio Network Solutions Grp., LLC*, No. 20-133, 2020 WL 5910168, at *5 (S.D. Ill. Oct. 6, 2020). Because Plaintiff has not stated a plausible claim against Target, she is not entitled to seek injunctive relief.

### CONCLUSION

This Court should dismiss Plaintiff's lawsuit with prejudice and without leave to amend.

Dated: August 26, 2022

Respectfully submitted,

By: /s/ Dean N. Panos
 Dean N. Panos (ARDC No. 6203600)
 Jenner & Block LLP
 353 N. Clark Street
 Chicago, IL 60654-3456
 Telephone: (312) 923-2765
 Facsimile: (312) 527-0484
 dpanos@jenner.com

 Attorneys for Defendant
 Target Corporation

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed on August 26, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated: August 26, 2022              By:    /s/ Dean N. Panos
                                                                     Dean N. Panos