IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JESSICA GOUWENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 3:22-cv-50016<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Defendant Target Corporation (Target) manufactures, labels, markets, and sells a "fruit punch" flavored concentrated liquid water enhancer under its brand, Market Pantry. At some point between December 2020 and June 2021, Plaintiff Gouwens purchased one of these products, expecting that the fruit punch flavor was only from natural flavoring ingredients and not from artificial flavoring ingredients. FAC ¶¶ 113–14, Dkt. 19. Gouwens wants to represent a class of customers and brings claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), "violations of state consumer fraud acts", breach of express warranty, and common-law fraud. *See* FAC ¶¶ 131–155. Target moves to dismiss under Rule 12(b)(6). For the reasons below, the motion is granted.

1

I. Background[1]

Target sells a fruit punch flavored water enhancer under its own private store-label brand, Market Pantry. The Market Pantry brand has an industry-wide reputation for quality and value, so many consumers consider Market Pantry as an equivalent to name brand products. ¶¶ 104–07. The front label of Target's fruit punch flavored water enhancer (Product), says in part, "Natural Flavor with Other Natural Flavors", as reflected in the following image:

 ¶ 1.

Fruit Punch refers to a beverage taste made from a variety of fruits, including apple, cherry, orange, pineapple, peach, grape, and pear. ¶ 29. Plaintiff alleges that because the front label of the Product omitted any reference to artificial flavor, she was led to believe that the fruit punch taste was derived from only natural flavors. ¶ 64. The Food and Drug Administration (FDA) broadly defines a "natural flavor" as an "essential oil, oleoresin, essence or extractive, protein

---

[1] These facts are taken from the Amended Complaint, Dkt. 19. The Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

hydrolystate" that is extracted, distilled, or similarly derived from a plant or animal source made through "roasting, heating, or enzymolysis." 21 C.F.R. § 101.22(a)(3). The FDA, however, does not define the term "natural". *Id.* In contrast, artificial flavors are any flavors that are not defined as natural flavors, even if they have exactly the same chemical composition as those derived from a natural source. *See* 21 C.F.R. § 101.22(a)(1).

The ingredient list of the Product identifies "malic acid" as the second ingredient. ¶ 61.

INGREDIENTS: WATER, MALIC ACID, CITRIC ACID, LESS THAN 2% OF: NATURAL FLAVORS, SUCRALOSE, ACESULFAME POTASSIUM, POTASSIUM CITRATE, GUM ARABIC, RED 40, SUCROSE ACETATE ISOBUTYRATE, NIACINAMIDE (VITAMIN B3), PYRIDOXINE HYDROCHLORIDE (VITAMIN B6), CYANOCOBALAMIN (VITAMIN B12), POTASSIUM SORBATE (PRESERVATIVE). ¶ 60

There are two types of malic acid, l-malic acid occurs naturally in various fruits and is known for providing sweetness and tartness. ¶ 45. D-malic acid does not occur naturally and is commonly found in a mixture with the naturally occurring l-malic acid to form dl-malic acid. ¶¶46–47. Plaintiff claims that laboratory analysis shows that the malic acid in the Product, is artificial dl-malic acid. ¶ 56. Plaintiff claims that because of the concentration of dl-malic acid, the Product is not naturally flavored, and the front label should disclose the presence of not only natural but also artificial flavor. ¶¶ 61–65. Plaintiff also states that the ingredient list is misleading because it only identifies the generic "malic acid" instead of identifying the ingredient as "dl-malic acid". *Id.* Plaintiff claims that had

3

she known the Product contained dl-malic acid instead of natural d-malic acid, she would not have bought the Product or would have paid less. ¶¶ 48, 83.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and give the defendant fair notice of the basis of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when there is "more than a sheer possibility that a defendant acted unlawfully." *Id.* The plaintiff must plead enough facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680–81.

## III. Analysis

Plaintiff brings this putative class action complaint against Target. Plaintiff brings three claims under Illinois Law: (1) a violation of the ICFA; (2) breach of express warranty; and (3) common law fraud. Plaintiff also brings claims under the consumer protection laws of Michigan, Texas, Arkansas, Delaware, Wyoming, Virginia, and Oklahoma. Plaintiff seeks both injunctive relief and money damages. Target now moves to dismiss the Amended Complaint in its entirety under Rule 12(b)(6), arguing that Plaintiff's claims are preempted, implausible, and inadequately pled. Mot. Dismiss, Dkt. 26.

### A. ICFA

To state a claim under the ICFA, Plaintiff must allege four elements: (1) a deceptive act or practice; (2) an intent for the consumer to rely on the deception; (3) the occurrence of the deception during conduct involving trade or commerce; and (4) actual damage that was proximately caused by the deception. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *see also Strow v. B&G Foods, Inc.*, 2022 U.S. Dist. LEXIS 179463 at *13 (N.D. Ill. Sep. 30, 2022). Deception under the ICFA is circularly defined as "[a] statement [that] creates a likelihood of deception or has the capacity to deceive." *People ex. rel Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d. 1378, 1387 (Ill. App. 1991); *see also Bober v. Glaxo Wellcome Plc.*, 246 F.3d 934, 938 (7th Cir. 2001). A reasonable consumer standard is used to determine if deception has occurred. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). This standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) (quoting *Beardsall*, 953 F.3d at 972–73).

The underlying basis for every claim in Plaintiff's complaint requires her to plausibly allege that the malic acid found in the Product is artificial dl-malic acid, not the natural d-malic acid. If Plaintiff fails to establish this distinction, there is no basis for any of the other claims. Target first argues that Plaintiff has not plausibly alleged that the Product contains artificial malic acid because she has not described the testing methodology of the laboratory analysis that she relies on to claim that

5

the Product contains artificial dl-malic acid. Mot. Dismiss at 6. This argument, however, is misplaced at the pleading stage and requiring more would exceed federal pleading standards. *Iqbal*, 556 U.S. at 678; *see Herron v. Meyer*, 820 F.3d 860, 863 (7th Cir. 2016) ("[A] complaint narrates a claim and need not supply the proof.")

Next, Target argues that Plaintiff has not plausibly alleged that any form of malic acid serves as a characterizing flavor of fruit punch and instead argues that malic acid is used a flavor enhancer. Mot. Dismiss at 6. In retort, Plaintiff argues that the Court should not decide whether malic acid functions as a flavor or flavor enhancer because other courts have concluded that determining this issue at the pleading stage is inappropriate. P.'s Opp., Dkt. 32, citing *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d. 814, 827–28 (N.D. Ill. 2021) (internal citations omitted). A flavor is "any substance, the function of which to impart flavor." 21 C.F.R.§ 101.22(a)(1). A flavor enhancer is a "substance added to supplement, enhance, or modify the original taste and/or aroma of the food, without imparting a characteristic taste or aroma of its own." C.F.R. § 170.3(o)(11). The FDA explicitly states that malic acid can serve multiple functions including use as a flavor enhancer, a flavoring agent and adjuvant, and a PH control agent. 21 C.F.R. § 184.1069 (c).

There is no dispute that malic acid "is known for providing sweetness and tartness." Mot. Dismiss at 7. Nevertheless, Target points out that FDA regulations define fruit punch as a blend of flavors with no primary recognizable flavor and

argues that because of the definition, the sweetness and tartness provided by malic acid cannot serve as the recognizable flavor of fruit punch. *Id.* But the Court is unconvinced by Defendant's argument. Although fruit punch may not have a single primary recognizable flavor, it still must have *a* flavor, sweetness and tartness may very well be those flavors. Accepting these allegations as true, the Court finds that Plaintiff has raised a plausible inference that the malic acid used in the Product acts a flavor, not just a flavoring agent. Therefore, determining the use of malic acid in the Product is a question that cannot be decided at the pleading stage. *Willard*, 577 F. Supp. 3d, at 827–28.

So, Plaintiff may have overcome her first hurdle—that she has plausibly plead the malic acid was artificial dl-malic acid. But Plaintiff must still plausibly plead that a reasonable consumer could be misled.

To state an ICFA claim, Plaintiff must plausibly establish that Target engaged in an act or practice that could mislead a reasonable consumer. *Bell*, 982 F.3d at 474–75. Plaintiff's ICFA claim is based on her allegation that Target's omission of any reference to artificial flavor on the front label and ingredient list of the Product was misleading and caused consumers like Plaintiff to assume the fruit punch taste was "only from natural flavors." FAC ¶ 64. Target argues that an omission would not mislead reasonable consumers into believing that the Product's taste was only from natural flavors because the labels do not state it is "all natural" or free from artificial flavors and the Product is a bright red, shelf-stable liquid concentrate. Mot. Dismiss at 9, Dkt. 26.

7

Sometimes, an omission of a material fact may satisfy the ICFA requirements of pleading fraud but only when the omission is "employed as a device to mislead." *Pappas v. Pella Corp.*, 844 N.E. 2d 995, 998 (Ill. App. 2006); *see* 815 Ill. Comp. Stat. 505/2. However, an omission is not actionable fraud if it gives rise to an "incomplete" as opposed to affirmatively "false impression." *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (quoting *Phillips v. DePaul Univ.*, 19 N.E. 3d 1019, 1028 (Ill. App. 2014). The Product's front label states it contains "Natural flavor with other natural flavors" but does not amount to an affirmative representation that the Product is free from artificial flavors. Further, Plaintiff fails to plausibly allege that this omission would mislead a significant portion of the targeted consumers to be deceived or misled. *Bell*, 982 F.3d at 474–75. A reasonable consumer would not believe that a shelf-stable, bright red fruit punch flavored liquid water enhancer was free of artificial ingredients absent an affirmative statement to the contrary. Target also points out that other courts have interpreted FDA regulations to expressly permit a food product to be labeled as containing natural flavors, despite the ingredients themselves not being all natural. *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 887, 889 (C.D. Cal. 2013); *see also Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102–03 (N.D. Cal. 2012) ("[U]nder 21 C.F.R. § 101.22(i), a product may be labeled as 'fruit flavored' or 'naturally flavored,' even if it does not contain fruit or natural ingredients. So long as that product 'contains natural flavor' which is 'derived from' the 'characterizing food ingredient,' it will not run afoul of the regulation.")

8

Plaintiff also alleges that Target was required, under FDA regulation 21 C.F.R. § 101.4(b), to list malic acid using the "specific name" of dl-malic acid, instead of the generic name of malic acid. FAC ¶ 62. Plaintiff contends dl-malic acid is the particular form of malic acid in the Product, and because the ingredient list only lists "malic acid", *see* FAC ¶ 60, Plaintiff was misled to believe the Product did not contain artificial flavors. FAC ¶ 61–65. Target presents two arguments. First, Target asserts that Plaintiff has not plausibly alleged that the malic acid in the Product is, in fact, dl-malic acid. Second, according to Target, any claim that it misleads consumers by using the generic phrase "malic acid" is preempted by FDA regulations that expressly permit it to use the generic phrase. Mot. Dismiss at 13, Dkt. 26. As noted earlier, Plaintiff has made a plausible allegation that the malic acid in the Product is the artificial dl-malic acid, so Target's first argument fails. This leaves Target with its preemption argument.

Target argues that the Product's label is consistent with FDA Regulation 21 C.F.R. § 101.4 and not misleading. ("Ingredients required to be declared on the label or labeling of a food… shall be listed by [their] common or usual name…"). In *Willard*, the court agreed that "claims based on the theory of listing 'malic acid' instead of dl-malic acid' on the ingredient list are preempted" and dismissed the related claims. *Willard,* 577 F. Supp. 3d at 830. Plaintiff fails to cite any cases in which a court has found that malic acid must be listed with specificity. But there are numerous cases that have concluded that it was sufficient for a food manufacture to only list "malic acid" in the ingredient list because it is the common

9

name for other forms of malic acid. *Id.* (compiling cases holding that FDA regulations do not require that malic acid be listed in the ingredients by a more specific name). Plaintiff's attempt to distinguish her claims from *Willard* fails. Instead, Plaintiff contradicts her own allegations when she argues that she "never alleged the Product was 'labeled as if [it] contained only natural ingredients [or an] all-natural product instead of one that contains artificial flavoring.'" P.'s Opp. at 5, Dkt. 32. But, in fact, Plaintiff alleges this multiple times in her Amended Complaint. *See* FAC ¶ 58 ("The statement, 'Natural Flavors With Other Natural Flavors' directly below 'Fruit Punch' tells consumers the Product's fruit punch taste is from (1) natural flavor derived from the fruit ingredients used … and (2) natural flavor from natural sources …"; FAC ¶ 64 ("[T]he front label and ingredient list was misleading and caused consumers like Plaintiff to expect the fruit punch taste was only from natural flavors"); FAC ¶ 114 ("Plaintiff believed the Product's fruit punch taste was only from natural flavoring ingredients and not from artificial flavoring ingredients because that is what the representations said and implied.") The Court need not credit these assertions in the response brief that are inconsistent with the complaint's allegations. *See Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000); *Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996).

    The Court agrees with Target that it is not misleading for it to "disclose that its products contain natural flavors or to use an accurate regulatory disclosure that is mandated by federal law." Reply in Supp. at 10, Dkt. 33. Accordingly, Plaintiff's

10

ICFA claim is based on a fanciful and unreasonable interpretation of the Product's label. *See Bell*, 982 F.3d at 477 ("[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used.") Because Plaintiff has not stated a plausible claim for relief under the ICFA, her ICFA claim is dismissed with prejudice. *Id.* at 477 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified"); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016) (affirming dismissal with prejudice where no reasonable consumer would be misled by challenged label statements).

**B. Claims under other State's Consumer Fraud Statutes**

Plaintiff also alleges that Target's conduct violates the consumer-fraud statutes of Michigan, Texas, Arkansas, Delaware, Wyoming, Virginia, and Oklahoma, and seeks to represent a class of persons who purchased the Product in these states. Defendants argue – in a string cite in a footnote – that the statutes of these states employ the same "reasonable consumer" standard used in the ICFA, and that these claims must also suffer the same fate as the ICFA claim. Mot. Dismiss at 10 n.1, Dkt.26.

It is well-established law that arguments raised only "by passing reference in a footnote" are deemed waived. *States v. White*, 870 F.2d 1509, 1513 (7th Cir. 1989); *Evergreen Square of Cudahy v. Was. Hous. & Eon. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017). But Plaintiff does not argue waiver in her response to the motion to

11

dismiss. However, the table of contents of Plaintiff's response contains a line-item that purportedly seeks to argue waiver of Target's footnote argument, but curiously Plaintiff does not raise the argument in the body of her response. *See* P.'s Opp. at "ii", Dkt. 32. The table of contents line-item makes clear that Plaintiff contemplated and had the opportunity to develop the argument in the motion but failed to do so, and as a result Plaintiff has "waived waiver" by not challenging Target's footnote argument. *See United States v. Prado*, 743 F.3d 248, 251 (7th Cir. 2014).

Absent any argument to the contrary, because the other state's consumer fraud statutes apply the same reasonable consumer standard which Plaintiff failed to show in her ICFA claim, this claim must fail too. Target's motion to dismiss the consumer fraud claims under the laws of Michigan, Texas, Arkansas, Delaware, Wyoming, Virginia, and Oklahoma, is granted.

**C. Common Law Claims**

Plaintiff also brings state law claims for breach of express warranty and common-law fraud. These claims are premised on Plaintiff's assertion that Target's labeling is deceptive or misleading based on the same allegations discussed in connection with her ICFA claims. Without a plausible allegation of deception, these remaining claims must also suffer the same fate for the reasons already stated. *See Zohar v. Orgain LLC*, 2021 U.S. Dist. LEXIS 213525, at *15–16 (N.D. Ill. Nov. 4, 2021); *and see Hayes v. General Mills, Inc.*, 2021 U.S. Dist. LEXIS 141634, at *4 (N.D. Ill. July 29, 2021) (noting Plaintiff's ICFA and common law claims "rise and

fall together.") Because Plaintiff has not plausibly alleged deception, the claims for breach of express warranty and common-law fraud are dismissed.

## IV. Conclusion

For these reasons, the Court grants Target's motion to dismiss and dismisses Plaintiff's Amended Complaint with prejudice.

Date: December 30, 2022

_____
Honorable Iain D. Johnston
United States District Judge